UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEPHANIE PAYTON RN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MARTIN J. WALSH United States Secretary of Labor, in his official capacity, <br> ASCENSION ST. VINCENT HOSPITAL a Delaware Corporation Registered and doing business in Indiana, <br><br> Defendants. | No. 1:21-cv-02817-JPH-MG |

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Ascension St. Vincent Hospital (Ascension) adopted a policy requiring its employees to be vaccinated against COVID-19. Plaintiffs each requested an exemption from the vaccination requirement based on their religious beliefs. Ascension denied those requests. Plaintiffs sought a temporary restraining order prohibiting Ascension from putting them on unpaid leave and terminating their employment. The Honorable Sarah Evans Barker denied that motion on November 12, 2021, and Ascension put Plaintiffs on unpaid leave the same day.[1]

---

[1] This case was transferred under Local Rule 40-1(e) as a related case with *Halczenko v. Ascension Health Inc.*, No. 1:21-cv-2816. To the extent the controlling applicable law and certain background facts are the same, the Court sets them forth as articulated in *Halczenko*, 2021 WL 6196992 (S.D. Ind. Dec. 30, 2021) (order denying preliminary injunction).

1

Ascension had previously informed Plaintiffs that their employment would be permanently terminated on January 4, 2022, if they were still unvaccinated at that time.  But in mid-December, Ascension reversed course and informed all but one Plaintiff—Dr. Casey Delcoco—that they had been recalled and could return to their respective positions.  The motion for preliminary injunctive relief is moot with respect to those Plaintiffs who have been reinstated or have resigned.[2]  Dr. Delcoco, on the other hand, has not been informed that her exemption request is granted or that her clinical privileges at Ascension's hospitals have been restored.  Accordingly, the Court addresses only Dr. Delcoco's request that Ascension reinstate her clinical privileges.  For the reasons explained below, that motion is **DENIED**.

## I.
## Facts & Background

By agreement of the parties, dkt. 44 at 2, no discovery was conducted and no hearing was held.  Consequently, the Court bases its factual findings on the parties' briefs and the written record.

Dr. Casey Delcoco is a board-certified family medicine doctor who specializes in obstetrics.  Dkt. 1 at 3 ¶ 8.  She runs her own clinic, Magnificat Family Medicine, where she provides faith-based fertility care to patients.  *Id.*; dkt. 60 at 1.  Dr. Delcoco has clinical privileges in Ascension's network on a

---

[2] At least two Plaintiffs, Joshua Frederick and Sarah Rottler, resigned their positions on November 12, 2021, to avoid having a suspension on their employment records. Dkt. 55 at 1; dkt. 61 at 2.

PRN or "as needed" basis. *Id.* [3]  Therefore, she was included in Ascension's COVID vaccine mandate, instituted in the late summer-early fall of 2021.

After this policy was announced, Dr. Delcoco applied for an exemption based on her sincerely held religious beliefs. Dkt. 38 at 2 ¶ 4. Ascension denied her exemption request. Dkt. 39 at 2–3. The parties disagree on whether this terminated Dr. Delcoco's PRN contract. *Compare* dkt. 60 at 1 *with* dkt. 61 at 1. Regardless, it is the Court's understanding that Dr. Delcoco no longer has clinical privileges at Ascension facilities as a result of the denial of her exemption request. Dkt. 56; dkt. 61 at 1.

Dr. Delcoco played a critical role in organizing her fellow employees to pursue legal action against Ascension after their exemption requests were denied. Dkt. 61 at 1. Plaintiffs filed complaints with the Equal Employment Opportunity Commission, alleging violations of Title VII of the Civil Rights Act of 1964. Dkt. 1 at 9 ¶ 60. Specifically, they allege that Ascension "made no attempt to reasonably accommodate the Plaintiffs['] religion" and has not shown "that doing so would constitute an unreasonable burden." Dkt. 39 at 12.[4]  They also sought a temporary restraining order against Ascension, dkt. 3,

---

[3] Because the parties have not raised or briefed the issue, the Court assumes for purposes of ruling on the motion for a preliminary injunction that Title VII applies to Dr. Delcoco's relationship with Ascension.

[4] Plaintiffs also argue that Ascension's policy violated their First Amendment rights and the Religious Freedom Restoration Act. Dkt. 39 at 3. However, because Plaintiffs have not sufficiently alleged that Ascension is a "state actor," the Court does not consider these arguments at this time. *See Listecki v. Official Committee of Unsecured Creditors*, 780 F.3d 731, 736, 741 (7th Cir. 2015); *Doe 1 v. NorthShore Univ. HealthSystem*, 2021 WL 5578790 at *15–17 (N.D. Ill. Nov. 30, 2021).

dkt. 19, dkt. 21, which was denied on November 12, 2021. Dkt. 27. Plaintiffs then filed a motion for a preliminary injunction. Dkt. 38.

While most Plaintiffs have been reinstated or had already resigned, Dr. Delcoco's clinical privileges with Ascension have not been restored. Dkt. 56.

## II.
## Applicable Law

### A. Preliminary injunction standard

Injunctive relief is "an exercise of very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (citations and quotations omitted). To obtain such extraordinary relief, the party seeking the preliminary injunction carries the burden of persuasion by a clear showing. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Dos Santos v. Columbus–Cuneo–Cabrini Med. Ctr.*, 684 F.2d 1346, 1349 (7th Cir. 1982).

Determining whether a preliminary injunction is appropriate under Federal Rule of Civil Procedure 65 involves a two-step inquiry, with a threshold phase and a balancing phase. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). At the threshold phase, the moving party must show that: (1) without the requested relief, it will suffer irreparable harm during the pendency of its action; (2) traditional legal remedies would be inadequate; and (3) it has "a reasonable likelihood of success on the merits." *Id.* "If the moving party cannot establish either of these prerequisites, a court's inquiry is over and the injunction must be

denied." *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992) (considering, as many courts do, elements 1 and 2 together).

If, however, the movant satisfies these requirements, the Court proceeds to the balancing phase, applying a "sliding scale" approach "to determine whether the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Whitaker*, 858 F.3d at 1044*; Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

### A. Irreparable harm and sufficiency of remedies

"Harm is irreparable if legal remedies are inadequate to cure it. [] Inadequate 'does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered.'" *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021) (citations omitted). The remedial scheme of Title VII, which is designed to make the plaintiff whole, includes a broad range of remedies available to a prevailing plaintiff. *Williams v. Pharmacia Inc.*, 137 F.3d 944, 952 (7th Cir. 1998) (citations omitted). The range of remedies includes backpay to compensate for lost income; reinstatement or front pay to mitigate future harm; compensatory damages; and punitive damages to punish, should the jury find that the employer engaged in a discriminatory practice with malice or deliberate indifference. Civil Rights Act of 1964, § 701 *et seq.*, as amended, 42 U.S.C. § 2000e-5(g)(1); 42 U.S.C. § 1981a(b)(1); *see generally Morris v. BNSF Railway Co.*, 969 F.3d 753, 767–68 (7th Cir. 2020) (discussing range of Title VII remedies); *Sambrano*

*v. United Airlines, Inc.*, 2021 WL 5176691 at *5–6 (N.D. Tex. Nov. 8, 2021) (discussing a court's "broad discretion" to craft relief under Title VII).

Ordinarily, "a permanent loss of employment, standing alone, does not equate to irreparable harm." *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005); *see also Sampson v. Murray*, 415 U.S. 61, 92 (1974); *Bedrossian v. Nw. Mem'l Hosp.*, 409 F.3d 840, 845 (7th Cir. 2005); *Dos Santos*, 684 F.2d at 1349.  The possibility of reinstatement or backpay at the end of litigation is usually enough to show that preliminary injunctive relief is unnecessary.  *See e.g., Sampson*, 415 U.S. at 90; *Shegog v. Board of Educ. of City of Chicago*, 194 F.3d 836, 839 (7th Cir. 1999).

When a plaintiff prevails on an employment discrimination claim under Title VII, backpay is presumed to be appropriate and reinstatement to the plaintiff's former position is the "preferred remedy."  *Morris*, 969 F.3d at 767–68.  If reinstatement is impractical, then front pay may be awarded "to put [the plaintiff] in the identical financial position that he would have occupied had he been reinstated."  *Id.* at 768 (citation omitted).  Separately, compensatory damages may be awarded for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."  42 U.S.C. § 1981a(b)(3).

Nonpecuniary loss may include injury to character, reputation, and professional standing.  *Williams*, 137 F.3d at 952.  Additionally, "[l]ost future earning capacity is a nonpecuniary injury for which plaintiffs may be compensated under Title VII."  *Id.* at 953 (explaining that front pay award and

6

compensatory damages for future lost earnings are distinct and compensate the plaintiff for different injuries).

Regardless of the exact damages or relief sought, the harm complained of must be concrete; "speculative injuries do not justify" the extraordinary remedy of injunctive relief. *E. St. Louis*, 414 F.3d at 704.

### III.
### Analysis

Plaintiffs allege that Ascension "refused to consider the validity of the Plaintiffs['] request or evaluate the sincerity of their religious beliefs," and instead denied each religious exemption request with an identical, rote response. Dkt. 39 at 3. Dr. Delcoco further contends that, as a leader of the group of plaintiff-employees, she was targeted and retaliated against by Ascension. Dkt. 61 at 1–2. While these allegations of hostility to religion are extremely serious, Dr. Delcoco must "demonstrate" by a clear showing, "that the irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (emphasis in original); *see also E. St. Louis*, 414 F.3d at 704; *Dos Santos*, 684 F.2d at 1349. The Seventh Circuit has cautioned district courts that "[i]nterlocutory reinstatement in employment cases should be rare, if that remedy is ever appropriate." *Shegog*, 194 F.3d at 839.

As a preliminary matter, Dr. Delcoco has not submitted evidence in support of her claim. Plaintiffs' complaint, dkt. 1, is verified by several Plaintiffs, dkts. 1-1 through 1-9, but it is not verified by Dr. Delcoco. The Court could deny the motion for preliminary injunction on this basis alone.

7

*Mazurek*, 520 U.S. at 972. But for efficiency, the Court will assume that Dr. Delcoco could verify the allegations of general harm that are set forth in the complaint, as well as the allegations of particularized harm that are set forth in the briefing, dkt. 38 at 2, and evaluate the motion for preliminary injunction on the merits.

### A. Generalized Harms

The only evidence in the record relating to irreparable harm are Paragraphs 76 and 77 of Plaintiffs' verified complaint. Dkt. 1 at 11 ¶¶ 76–77. There, Plaintiffs allege that they "have and will [suffer] irreparable harm which includes loss of employment, status, prestige, lost wages, lost seniority, future employment, and other monetary and nonmonetary damages," *id.* at ¶ 76, and "will also suffer irreparable [harm] by the loss of their religious liberty if they take the vaccine or loss of employment if they do not." *Id.* at ¶ 77.

Regarding the first set of alleged harms, the law is clear that financial hardship associated with employment termination and other "external factors common to most discharged employees" cannot support a finding of irreparable harm, "however severely they may affect a particular individual." *Sampson*, 415 U.S. at 92 n.68 ("insufficiency of savings or difficulties in immediately obtaining other employment . . . will not support a finding of irreparable injury"); *see Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998) ("Loss of face and reputation" are not irreparable harm); *Roth v. Lutheran General Hosp.*, 57 F.3d 1446, 1460 (7th Cir. 1995) ("loss of professional association" does not amount to irreparable injury); *Dos Santos*, 684 F.2d at

1349 (finding that plaintiff's allegations that she "will be stigmatized in the medical community, her professional competence will be questioned, her prospects for future employment will be diminished, and she will be deprived of valuable experience in the practice of anesthesiology" did not constitute irreparable injury).

Moreover, Dr. Delcoco has not shown how these harms would affect her beyond the disruption felt by any discharged employee. She has designated no evidence to suggest that her loss of clinical privileges at Ascension facilities will have any impact on her reputation, work history, future employment, status, or prestige, or that it will result in loss of professional relationships. Similarly, as the owner of her medical practice, Dr. Delcoco's loss of clinical privileges at Ascension would not have any effect on her seniority. Last, even if Dr. Delcoco were a typical, salaried physician with Ascension, the Seventh Circuit has been clear that, even when faced with termination, "physicians are awarded no special treatment under *Sampson*." *Bedrossian*, 409 F.3d at 846.

Plaintiffs' second category of alleged irreparable harm is premised on irreparable "loss of their religious liberty if they take the vaccine or loss of employment if they do not." Dkt. 1 at ¶ 77; Dkt. 39 at 4–5. Ascension responds that "[n]o one is forcing Plaintiffs to take a vaccine or breach their religious beliefs." Dkt. 48 at 8. Therefore, Ascension urges this Court to adopt the reasoning of other courts that have held similar claims do not amount to irreparable harm because Dr. Delcoco can be compensated for any wrongful revocation of her privileges through traditional remedies at the end of litigation.

9

*Id.* at 9; *see, e.g., Doe 1*, 2021 WL 5578790 at *17 (Slip Copy N.D. Ill. Nov. 30, 2021) ("To be sure, Plaintiffs are statutorily protected 'from employers' attempts to discriminate or retaliate against these employees for living out their religious convictions.' But that difficulty 'does not demonstrate irreparable harm.'") (citations omitted); *Sambrano et. al. v. United Airlines, Inc.*, 2021 WL 5176691 at *4–5 (N.D. Tex. Nov. 8, 2021) (recognizing that "United's employees claimed they faced an impossible choice: get the vaccine or endure unpaid leave," but finding that the result of this choice is not irreparable harm); *Beckerich v. St. Elizabeth Med. Ctr.*, No. 2:21-cv-105, 2021 WL 4398027 at *3 (E.D.K.Y. Sep. 24, 2021) (noting that "no Plaintiff in this case is being forcibly vaccinated. . . these Plaintiffs are choosing whether to comply with a condition of employment, or to deal with the potential consequences of that choice.") (reconsideration denied).

The allegations of hostility toward or disregard of religion are not taken lightly. However, "[r]einstatement pending a trial on the merits, even in cases of race or sex discrimination, is an extraordinary remedy permissible only upon a substantial showing of irreparable injury." *E.E.O.C. v. City of Janesville*, 630 F.2d 1254, 1259 (7th Cir. 1980). Moreover, the remedies provided by Title VII are designed expressly to make such wrongfully terminated plaintiffs whole. *Williams*, 137 F.3d at 952.

### B. Particularized Harm

The only claim of irreparable harm specific to Dr. Delcoco was raised in the motion for preliminary injunction. Dkt. 38 at 4 ¶¶ 18–19. There, Dr.

Delcoco claims, without evidentiary support, that she has "31 pregnant patients" relying on her to deliver their babies, and that her "oral and written contracts" with those patients are "violated and breached by the actions of" Ascension. *Id.* at ¶ 18. She asserts that "[s]ignificant case law exists calling mere breach of contract an irreparable harm." *Id.* at ¶ 19. However, Dr. Delcoco did not cite any authority supporting this argument. Dkt. 38; dkt. 39; dkt. 51. Additionally, she has not shown that these patients cannot deliver their babies with her at another facility or without her at an Ascension facility. Therefore, this argument does not support a finding of irreparable harm.

*         *         *

The Court cannot ignore the wide range of equitable and legal remedies available to Dr. Delcoco in the future if she prevails. The possibility that adequate compensatory or other corrective relief will be available in the ordinary course of litigation, "weighs heavily against a claim of irreparable harm." *Sampson*, 415 U.S. at 90 (quotation omitted); *Abbott*, 971 F.2d at 12 (treating irreparable harm and sufficiency of available remedies as one factor).

Under the totality of circumstances, Dr. Delcoco has failed to make a "clear showing" of irreparable injury or establish an insufficiency of remedies that would justify the extraordinary relief she seeks pending outcome of this litigation. Absent this showing, the injunction must be denied, *Abbott*, 971 F.2d at 12, so the Court does not reach the questions of likelihood of success on the merits or the balancing of harms.

Plaintiffs also assert an independent claim against the Secretary of Labor in relation to the Occupational Health and Safety Administration's COVID vaccine mandate. Dkt. 1 at 9–10 ¶¶ 61–65 ("First Cause of Action"). However, the arguments in the motion for preliminary injunction, dkt. 38, brief in support, dkt. 39, the reply brief, dkt. 51, relate solely to Ascension's actions, so the Court does not address the claim against Secretary Walsh at this time.

## IV.
## Conclusion

Plaintiffs' motion for preliminary injunction, Dkt. [38], is **denied.** Plaintiffs' request for an evidentiary hearing on imposition of a permanent injunction is **denied without prejudice**. Magistrate Judge Garcia is asked to conduct a status conference to enter an expedited case management plan.

**SO ORDERED.**

Date: 1/7/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Eric C. Bohnet
ATTORNEY AT LAW
ebohnet@gmail.com

Brian L. McDermott
JACKSON LEWIS PC (Indianapolis)

12

brian.mcdermott@jacksonlewis.com

Matthew McReynolds
Pacific Justice Institute
mattmcreynolds@pji.org

David Peters
Pacific Justice Institute
dpeters@pji.org

Patricia Anderson Pryor
JACKSON LEWIS, LLP
pryorp@jacksonlewis.com

Megan Ann Van Pelt
JACKSON LEWIS PC (Indianapolis)
megan.vanpelt@jacksonlewis.com